UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| CARLA WHITE | * | CIVIL ACTION NO. |
| VERSUS | * | JUDGE |
| NORTH LOUISIANA | * | MAGISTRATE JUDGE |
| CRIMINALISTICS LABORATORY | * | JURY TRIAL |

## COMPLAINT

Plaintiff, Carla White, through undersigned counsel, brings this civil action against North Louisiana Criminalistics Laboratory and represents the following:

## I.  JURISDICTION

1.     This is an action for declaratory, injunctive and monetary relief for discrimination and retaliation in employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. Section 2000e et seq. Jurisdiction is based on 42 U.S.C. Section 2000e-5(f)(3), 28 U.S.C. Section 1331, and supplemental jurisdiction under 28 U.S.C. Section 1332 for state law claims asserted herein.

## II.  PARTIES

2.     Plaintiff is:

Carla White ("Plaintiff"), a 39-year-old white female, of the full age of majority, who at the time of the initial filing of this lawsuit was a resident of the State of Louisiana.

3.     Made Defendant herein is:

North Louisiana Criminalistics Laboratory ("Defendant"), with its principal place of business located in Shreveport, Louisiana, who can be served through its Laboratory Director, Pat Wojtkiewicz, Ph.D., at 1630 Tulane Avenue, Shreveport, Louisiana, 71103.

1

4.    Defendant was Plaintiff's "employer" within the meaning of 42 U.S.C. Section 2000e-(b).

### III.  VENUE

5.    Venue lies in this Court as the unlawful employment practices and other actions made the basis of this suit occurred within the Western District of Louisiana.

### IV.  FACTUAL ALLEGATIONS

6.    Plaintiff started working with Defendant on February 1, 2005.

7.    During the years 2005-2008, Plaintiff's Supervisor, Richard Beighley ("Mr. Beighley"), a white male, was constantly staring at Plaintiff's breasts and rubbing close near Plaintiff's breasts area which made Plaintiff very uncomfortable.

8.    During the years 2005-2008, Plaintiff on multiple occasions requested that Mr. Beighley stop staring at her breasts and not to invading her personal space.

9.    During these same years, Plaintiff on multiple occasions spoke to the Executive Secretary, Teri Pritchard and the System Director, Jimmy Barnhill ("Mr. Barnhill") regarding Mr. Beighley actions of staring at Plaintiff's breasts and invading her personal space.

10.    Plaintiff was directed by Mr. Barnhill to "quit making a big deal out of it and just get back to doing her work."

11.    Defendant did not have a Human Resources Department or HR Manager.

12.    In August 2008, Plaintiff was released for casework after a 2.5-year long training program.

13.    Sometime during the years 2012-2017, Mr. Barnhill, the System Director, held lab a wide meeting wherein proper court attire for men and women was discussed.

2

14.     During this meeting, Mr. Barnhill told the women that they should always wear closed toe shoes to court and that the women did not need to be wearing "Come F--k Me" shoes with their toes hanging out because it might turn some men on if they had a foot fetish like him.

15.     In May 2017, Plaintiff attempted to resign from employment as all casework and section related duties were being completed by her alone.

16.     Management requested that Plaintiff reconsider and promised things would change and advised the supervisor would be helping with casework and other duties. However, nothing changed.

17.     During this time in 2017, Plaintiff was consistently talked down to by management and assigned section related duties in addition to her casework load.

18.     During this time in 2017, the Supervisor, Mr. Beighley, was never made to perform case related duties, which was part of his duty as the supervisor.

19.     In November of 2017, Supervisor Mr. Beighley, went out on sick leave, leaving all the casework and additional duties to Plaintiff until his return to work in spring of 2018.

20.     In December of 2017, Plaintiff worked a case wherein the results were questioned by the Sabine Parish District Attorney (DA) as Plaintiff's results were doubted because she was a female.

21.     Thereafter, System Director, Mr. Barnhill, instructed Plaintiff re-work the case and had Mike Stelly, a white male, review Plaintiff's work for accuracy.

22.     In May of 2018, Plaintiff was made co-responsible for teaching a trainee, Caitlin Vollenweider, who was hired to work in Plaintiff's section.

3

23.    In June 2018, Plaintiff organized and started the National Integrated Ballistic Database ("NIBIN") local site, working through the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and was subsequently named NIBIN Coordinator by the ATF.

24.    In March 2019, a second trainee, Summer Johnson ("Ms. Johnson"), was hired to work in Plaintiff's section and Plaintiff was tasked with being co-responsible for training two people, in addition to performing case work and supervisory duties assigned to her to complete.

25.    From 2017 through 2019, Plaintiff's Supervisor, Mr. Beighley, did not handle any casework or help with any of the excessive duties assigned to Plaintiff.

26.    In February 2020, Plaintiff's Supervisor, Mr. Beighley, announced his retirement and the lab closed temporarily closed near the end of March 2020 due to COVID.

27.    In May 2020, Plaintiff returned to work operating with skeleton crews and working alternating weeks.

28.    Later in May of 2020, Phillip Stout ("Mr. Stout"), a new experienced male employee, was hired in Plaintiff's section to potentially take her place.

29.    In May of 2020, Plaintiff was promoted to the Supervisor position and was advised there would be a substantial pay raise.

30.    Mr. Barnhill, the System Director, advised Plaintiff that she was his "last choice, but she would have to do."

31.    On or about June 16, 2020, Plaintiff was told by System Director Barnhill that Plaintiff would only be an Interim Supervisor and not receive a pay raise for 6 months.

32.    On or about July 16, 2020, the first trainee, Caitlin Vollenweider, was allowed to resign, instead of being terminated due to multiple write up for not successfully completing assignments and competency tests.

33.     In July 2020 Plaintiff was instructed by management to train Mr. Stout, the newest employee, to Defendant's policies and procedures and to get him trained and ready for case release in six weeks beginning August 3, 2020.

34.     Throughout August 2020, Plaintiff has multiple meetings with management regarding Phillip Stout's training.

35.     On August 18, 2020, Plaintiff had a meeting with all directors plus the Quality Manager wherein Plaintiff informed them that Mr. Stout's training was incomplete, and that Plaintiff felt Mr. Stout required additional time to be trained properly.

36.     During this meeting, Plaintiff was advised her opinion did not matter and Plaintiff was instructed to sign off Mr. Stout off for casework release no matter what. Plaintiff objected and stated that she believed she was being treated differently because of her gender.

37.     Following her complaint, Plaintiff was accused of causing trouble, was advised that she was performing poorly and was a horrible example of an employee.

38.     Plaintiff was criticized and degraded in every way possible, to the point of tears.

39.     Plaintiff on multiple previous occasions requested assistance from management regarding her job duties.

40.     On or about August 18, 2020 Plaintiff was written up by the directors and Quality Manager regarding performance of her job duties.

41.     Plaintiff was the only one working cases in addition to training the other employees in her section but her request for assistance was denied.

42.     On or about September 14, 2020, the newest hire, Mr. Stout, was released for case work after his 6 weeklong training with Plaintiff.

5

43.    On September 15, 2020, Plaintiff met with Designated System Director, Joey Jones ("Mr. Jones), to discuss that agenda for the September 17 section meeting wherein Plaintiff was instructed to prepare a plan to complete Ms. Johnson's training and was given permission for meetings in the lab with outside persons (as per COVID changes).

44.    In the September 17, 2020 Zoom Section meeting, Plaintiff had prepared a written plan for the completion of Ms. Johnson's training; however, Plaintiff was advised by the Lab Director, Pat Wojtkiewicz, Ph.D. ("Dr. Wojtkiewicz"), that he had other plans and would be planning things from now on.

45.    Dr. Wojtkiewicz and Plaintiff disagreed on what Ms. Johnson needed to complete her training.

46.    Plaintiff was the only party in the meeting with any experience in the Firearms section and was surprised by Dr. Wojtkiewicz's decision to override that of Plaintiff regarding the requirements for a Firearms Analyst.

47.    Plaintiff requested a recording of the Zoom meeting from Mr. Jones and to schedule a meeting with Mr. Jones and Dr. Wojtkiewicz as soon as possible, as Plaintiff planned to step down as Interim Supervisor and continue with her duties as a Senior Scientist.

48.    Plaintiff on multiple occasion requested the recording of the Zoom meeting from Mr. Jones; however, it was never produced to Plaintiff.

49.    On September 21, 2020, Plaintiff attended a self-scheduled meeting with the lab directors, Mr. Jones, Dr. Wojtkiewicz, and Mr. Barnhill, wherein she thanked them for the opportunity to serve as Interim Supervisor but requested to step down to a Senior Scientist.

50.    Mr. Jones advised they agreed, as the director has decided to demote Plaintiff after the September 18, 2020 Zoom meeting, remove her additional duties, including ATF

NIBIN Coordinator, and return Plaintiff to strictly do casework, nothing more. Plaintiff asserts that this action was taken in retaliation for her complaints of gender discrimination.

51.    On September 22, 2020, Plaintiff appeared at a meeting, via Slack app, with Mr. Jones and Dr. Wojtkiewicz wherein they advised the meeting of September 21, 2020 went well, until Mr. Jones received a phone call from the ATF office the night of September 21, 2020.

52.    Plaintiff was accused of maliciously telling the ATF that she was removed as their coordinator and that it was not her place to divulge that information.

53.    Plaintiff explained that she advised ATF in conversation that they would no longer be dealing with her as their Coordinator and did not know who would replace her.

54.    Plaintiff advised there was no malicious intent; that it was just a conversation with someone whom she had worked with for over 15 years.

55.    Mr. Jones instructed Plaintiff to go home for the day until her fate at the crime lab could be decided and escorted Plaintiff out of the building.

56.    Mr. Jones informed Plaintiff he would try to get her a written reprimand and hopefully she could return to work.

57.    On September 22, 2020 around 5:00 pm, Mr. Jones contacted Plaintiff and advised of her termination.

58.    On September 23, 2020, Mr. Jones contacted Plaintiff and scheduled a date for Plaintiff to return and gather her belongings.

59.    On September 25, 2020 Plaintiff was escorted by Mr. Jones to her office and work areas to gather her belongings.

60.     Plaintiff was given her last paycheck, a check for unused vacation hours, and a letter describing her termination. Plaintiff was informed her insurance was good until September 30, 2020.

61.     During last 6 months in 2020, one male employee, Alex King, in the Alexandria satellite lab was fired by his Director, Mike Stelly, then rehired by the System Director, Mr. Barnhill, who was missing work, not calling in, and not performing satisfactory work when present.

62.     During last 6 months in 2020 another male employee, Josh DeBord (Shreveport lab), was constantly violating lab procedures; however, Plaintiff is unaware if Mr. DeBord was written up or not but believes Mr. DeBord was never punished for lab violations.

63.     Plaintiff contends that she has been the victim of gender discrimination and targeted as a woman throughout her entire career with defendant. Plaintiff also asserts that the adverse action taken against her was because of her complaint of gender discrimination.

64.     The actions, conduct and practices of defendant complained of herein have caused Plaintiff both losses of front pay, back pay, and other economic pecuniary loses and further has cause Plaintiff emotional distress and other non-pecuniary damages.

65.     All administrative prerequisites have been satisfied.

### V.  CAUSES OF ACTION

66.     The actions, conduct and procedures of Defendants complained of herein constitute purposeful discrimination against Plaintiff based upon her sex and/or in retaliation for opposition to discrimination in violation of Title VII of the Civil Rights Act, as amended, codified under 42 U.S.C. 2000e, La. R.S. 23:301 *et. seq.*, La. R.S. 51:2256 and La.R.S. 23:967.

67.    Defendants' actions complained of herein were performed with malice or reckless indifference to and in knowing violation or reckless disregard of Plaintiff's federally protected rights.

68.    Plaintiff has no adequate remedy at law for the harm she has suffered because of the discriminatory and retaliatory practices of Defendants set forth herein.

69.    Because of the Defendants' actions, Plaintiff has been injured and has suffered or incurred damages and is entitled to recover statutory damages include compensatory damages, back pay, benefits, special damages, reinstatement/front pay and reasonable attorney fees resulting from the illegal conduct in addition punitive damages due her.

70.    Plaintiff filed a charge of discrimination with the Louisiana Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") within 180 days of the discriminatory and retaliatory employment practices described in this Complaint, and she has received her Notice of Right to Sue dated March 29, 2021 a copy which is attached hereinto as Exhibit "A." This Complaint is timely filed, and all administrative prerequisites have been met.

## VI.  JURY TRIAL DEMANDED

71.    Plaintiff demands a trial by jury as to all matters permitted by law.

## VII.  RELIEF

WHEREFORE, PLAINTIFF PRAYS:

(A)    that the Court declare the employment practices of which complaint is made to be in violation of 42 U.S.C. Section 2000(e) et. seq., and other applicable state law, otherwise inculpatory and illegal;

(B)    that the Court order Defendant to cease the discriminatory and retaliatory conduct enumerated herein and enjoin Defendant from engaging in further discrimination and retaliation against Plaintiff;

(C)    that the Court order Defendant to pay front pay and lost future wages in amounts to be determined by the jury;

(D)    that Plaintiff be awarded back pay, including prejudgment interest, and any other benefits or seniority to which she may have been entitled or which she may have lost as a result of the discrimination against her;

(E)    that Plaintiff be awarded compensatory and liquidated punitive damages pursuant to 42 U.S.C. 1981a and other applicable state law;

(F)    that Plaintiff be awarded the costs of this action, including attorneys' fees, pursuant to 42 U.S.C. Section 2000(e)-5(k), and other applicable law;

(G)    for trial by jury for those matters triable to a jury; and

(H)    that Plaintiff be awarded such other and further relief as the Court finds equitable, just and proper.

Respectfully submitted,

Allison A. Jones, Bar No. 16990

DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445


By:___/s/ Allison A. Jones_____
ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CARLA WHITE                              *    CIVIL ACTION NO.

VERSUS                                   *    JUDGE

NORTH LOUISIANA                          *    MAGISTRATE JUDGE
CRIMINALISTICS LABORATORY                *    JURY TRIAL

## VERIFICATION

BEFORE ME, the undersigned Notary Public, personally came and appeared CARLA WHITE, who did depose and state that she is the Plaintiff in the foregoing Complaint, that she has read the Complaint, and that all of the allegations contained therein are true and correct to the best of her knowledge, information and belief.

_____
CARLA WHITE

SWORN TO AND SUBSCRIBED before me, Notary Public, this 25 Day of June, 2021.

_____
NOTARY PUBLIC

DEBBIE F. BENTON, Notary Public
# 49018
Caddo Parish, Louisiana
My Commission is for Life

1