## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

CARLA WHITE                                        CIVIL ACTION NO. 21-1850

VERSUS                                             JUDGE S. MAURICE HICKS, JR.

NORTH LOUISIANA                                    MAGISTRATE JUDGE HORNSBY
CRIMINALISTICS LABORATORY

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Defendant North Louisiana Criminalistics Laboratory ("NLCL"). See Record Document 39. Plaintiff Carla White ("White") opposed. See Record Document 45. NLCL replied. See Record Document 46. For the reasons stated below, NLCL's Motion for Summary Judgment (Record Document 39) is **GRANTED**, and all of White's claims asserted against NLCL are **DISMISSED WITH PREJUDICE**.

### BACKGROUND

In her Complaint, White states that she started working for NLCL on February 1, 2005. See Record Document 1 at ¶ 6. From 2005 to 2008, White claims that her supervisor, Richard Beighley ("Beighley"), a male, was constantly staring at her breasts and rubbing up close to her breasts which made her very uncomfortable. See id. at ¶ 7. During these three years, White alleges that she requested Beighley to stop this behavior on multiple occasions. See id. at ¶ 8. Additionally, she asserts that she spoke to the Executive Secretary, Terri Pritchard ("Pritchard"), and the System Director, Jimmy Barnhill ("Barnhill"), on multiple occasions regarding Beighley's actions. See id. at ¶ 9. White claims Barnhill told her to "quit making a big deal out of it and just get back to doing her

work." See id. at ¶ 10. In August 2008, White alleges she was released for casework after a two and a half year long training program. See id. at ¶ 12.

Sometime between 2012 and 2017, White claims Barnhill held a lab wide meeting to discuss proper court attire for men and women. See id. at ¶ 13. During this meeting, she states that Barnhill told the women they should always wear closed toed shoes to court and did not need to be wearing "Come F—k Me" shoes with their toes hanging out because it might turn some of the men on if they had a foot fetish like him. See id. at ¶ 14. In May 2017, White allegedly attempted to resign from employment as all casework and section related duties were being completed by her alone. See id. at ¶ 15. She claims that management requested that she reconsider, promised her things would change, and advised her that a supervisor would be helping with casework and other duties. See id. at ¶ 16. However, White argues nothing changed. See id. In 2017, White maintains she was constantly talked down to by management and assigned section related duties in addition to her casework load. See id. at ¶ 17. She claims that Beighley never performed his case related duties as the supervisor. See id. at ¶ 18.

In November 2017, White states that Beighley went out on sick leave, leaving all the casework and additional duties to her until he returned in spring of 2018. See id. at ¶ 19. In December 2017, she alleges that she worked a case wherein the results were questioned by the Sabine Parish District Attorney because White is a female. See id. at ¶ 20. Thereafter, White asserts that Barnhill instructed her to re-work the case and had Mike Stelly ("Stelly"), a white male, review her work for accuracy. See id. at ¶ 21.

In May 2018, White claims she was made co-responsible for teaching Caitlin Vollenweider ("Vollenweider"), a trainee who was hired to work in her section. See id. at

¶ 22. In June 2018, White allegedly organized and started the National Integrated Ballistic Databased ("NIBIN") local site, working through the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). See id. at ¶ 23. She maintains she was subsequently named NIBIN Coordinator by the ATF. See id.

In March 2019, White states that Summer Johnson ("Johnson"), a second trainee, was hired to work in her section. See id. at ¶ 24. White maintains that she was tasked with being co-responsible for training two people, in addition to performing case work and supervisory duties. See id. From 2017 to 2019, she claims that Beighley did not handle any casework or help with any of the excessive duties assigned to her. See id. at ¶ 25.

In February 2020, White states that Beighley announced his retirement, and the lab temporarily closed near the end of March 2020 due to COVID. See id. at ¶ 26. In May 2020, she contends she returned to work operating with skeleton crews and working alternating weeks. See id. at ¶ 27. That same month, she alleges that Phillip Stout ("Stout"), a new experienced male employee, was hired in her section to potentially take her place. See id. at ¶ 28. White provides that she was later promoted in May to the supervisor position and was advised there would be substantial pay raise. See id. at ¶ 29. She claims Barnhill advised her that she was his "last choice, but she would have to do." See id. at ¶ 30.

On or about June 16, 2020, Barnhill allegedly told White that she would only be an interim supervisor and would not receive a pay raise for six months. See id. at ¶ 31. On or about July 16, 2020, Vollenweider was allegedly allowed to resign, instead of being terminated due to multiple write ups for not successfully completing assignments and competency tests. See id. at ¶ 32. In July 2020, White claims she was instructed by

3

management to train Stout on NLCL's policies and procedures to get him ready for case release in six weeks. See id. at ¶ 33.

Throughout August 2020, White asserts that she had multiple meetings with management about Stout's training. See id. at ¶ 34. On August 18, 2020, she allegedly had a meeting with all directors, including the Quality Manager, wherein she informed them that Stout's training was incomplete because she felt he required additional time to be trained properly. See id. at ¶ 35. During this meeting, White claims she was advised that her opinion did not matter, and she was instructed to sign off Stout for casework release no matter what. See id. at ¶ 36. White allegedly objected and stated that she believed she was being treated differently because of her gender. See id.

Following her complaint, White contends she was accused of causing trouble, advised she was performing poorly, and told she was a horrible example of an employee. See id. at ¶ 37. Furthermore, she alleges that she was criticized and degraded in every way possible. See id. at ¶ 38. She asserts that on multiple previous occasions, she requested assistance from management regarding her job duties but was denied. See id. at ¶ 39, 41.

On or about August 18, 2020, White was also allegedly written up by the directors and Quality Manager regarding the performance of her job duties. See id. at ¶ 40. On or about September 14, 2020, Stout was allegedly released for case work after his six weeks of training. See id. at ¶ 42. On or about September 15, 2020, White claims she met with the Designated System Director, Joey Jones ("Jones"), to discuss the agenda for the September 17 Zoom meeting, wherein White was instructed to prepare a plan to complete

4

Johnson's training and was given permission for meetings in the lab with outside persons. See id. at ¶ 43.

In the September 17 Zoom meeting, White prepared a written plan, but she claims she was advised by the Lab Director, Pat Wojtkiewicz ("Wojtkiewicz"), that he had other plans and would be planning things from now on. See id. at ¶ 44. White was surprised by Wojtkiewicz's decision because she was the only person in the meeting with any experience in the firearms section. See id. at ¶ 46. White asserts that she requested a recording of the Zoom meeting and requested to schedule a meeting with Jones and Wojtkiewicz because she planned to step down as Interim Supervisor and continue her duties as a Senior Scientist. See id. at ¶ 47. White claims the recording was never produced to her. See id. at ¶ 48.

On September 21, 2020, she attended a self-scheduled meeting with the lab directors, Jones, Wojtkiewicz, and Barnhill, wherein she allegedly thanked them for the opportunity to serve as the Interim Supervisor but requested to step down to a Senior Scientist. See id. at ¶ 49. Jones allegedly told her they were all in agreement, as the director had planned to demote her after the Zoom meeting, remove her additional duties, including ATF NIBIN Coordinator, and return her to strictly doing casework. See id. at ¶ 50. White asserts that this action was taken in retaliation for her complaints of gender discrimination. See id.

On September 22, 2020, White allegedly attended a meeting via Slack app with Jones and Wojtkiewicz, wherein they advised her that Jones received a phone call from the ATF office the night of September 21. See id. at ¶ 51. She claims she was accused of maliciously telling the ATF that she was removed as their coordinator, and it was not her

place to divulge that information. See id. at ¶ 52. White allegedly explained that she advised the ATF that they would no longer be dealing with her as their coordinator but did not know who would replace her. See id. at ¶ 53. She argues there was no malicious intent; it was just a conversation with someone whom she had worked with for over 15 years. See id. at ¶ 54. Jones allegedly instructed White to go home for the day until her fate at NLCL was decided. See id. at ¶ 55. She argues Jones informed her that he would try to get her a written reprimand and hopefully she could return to work. See id. at ¶ 56.

On September 22, 2020 around 5:00pm, White states that her employment at NLCL was terminated. See id. at ¶ 57. During the last six months of 2020, she claims that Alex King ("King"), a male employee in the Alexandria satellite lab, was fired by Stelly and then rehired by Barnhill. See id. at ¶ 61. Additionally, during this time, White argues that Josh DeBord ("DeBord"), a male employee in the Shreveport lab, was constantly violating lab procedures; however, she believes he was never punished for these violations. See id. at ¶ 62.

White contends she has been the victim of gender discrimination and targeted as a woman throughout her entire career with NLCL. See id. at ¶ 63. She asserts that the adverse action taken against her was because of her gender discrimination complaint. See id. She alleges that the actions, conduct, and practices of NLCL have caused her to suffer the loss of both front and back pay, other economic pecuniary losses, emotional distress, and other non-pecuniary damages. See id. at ¶ 64. Under Title VII and the Louisiana Employment Discrimination Act ("LEDA"), she asserts two causes of action: (1) gender-based discrimination and (2) retaliation. See id. at ¶¶ 66–70.

**LAW AND ANALYSIS**

**I. Legal Standards.**

    (a) Summary Judgment.

    A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552–53. (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trail that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

    If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2553). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). There is no

genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the moving party…." Id.

(b) Gender-Based Discrimination Claim.

"Claims asserted under the Louisiana Employment Discrimination Act…are analyzed under the same framework and jurisdictional precedent as Title VII claims." Carter v. Town of Benton, 827 F. Supp. 2d 700, fn 5. See Topolewski v. Jury, No. 23-00258, 2025 WL 392506, at *6 (W.D. La. Feb. 4, 2025); see also Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F. 3d 309, 311 (5th Cir. 1999). "Title VII forbids employers from discriminating against an employee 'with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin[.]'" Shahrashoob v. Tex. A&M Univ., 125 F. 4th 641, 648 (5th Cir. 2025) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff can prove a discrimination claim under Title VII either by direct or circumstantial evidence. See Ayorinde v. Team Indus. Servs. Inc., 121 F. 4th 500, 507 (5th Cir. 2024). If a plaintiff only offers circumstantial evidence, the Fifth Circuit analyzes the claim under the McDonnell Douglas burden shifting framework. Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973)). Under the framework, a plaintiff bears the initial burden. See Shahrashoob, 125 F. 4th at 649. A plaintiff must prove she "(1) belongs to a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group." Id.

If a plaintiff successfully establishes the prima facie case, the burden shifts to the employer "'to articulate some legitimate, nondiscriminatory reason for its action.'" Ayorinde, 121 F. 4th at 507 (quoting Ross v. Judson Indep. Sch. Dist., 993 F. 3d 315, 321 (5th Cir. 2021) (internal quotations marks and citations omitted)). If the employer "'can provide a reason, then the burden shifts back to the plaintiff to prove that the reason is pretextual.'" Id.

(c) Retaliation Claim.

A retaliation claim under the LEDA is analyzed under the same framework and jurisdictional precedent as a Title VII retaliation claim. See Carter, 827 F. Supp. 2d at fn 5; Topolewski, 2025 WL 392506, at *6; Lawrence, 163 F. 3d at 311. To establish a successful retaliation claim, a plaintiff must prove the following: "(1) participation in an activity protected by Title VII, (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse action." Anderson, 2023 WL 5918090, at *3 (citing McCoy v. City of Shreveport, 492 F. 3d 551, 556 (5th Cir. 2007)). Under Title VII, a protected activity "is defined as 'opposition to any practice rendered unlawfully by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" Newell v. Acadiana Planning Comm'n Inc., 637 F. Supp. 3d 419, 432–33 (5th Cir. 2022). "Evidence that the plaintiff opposed the defendant's conduct, standing alone, does not satisfy the opposition clause. Rather, the clause 'requires opposition of a practice made unlawfully by Title VII.'" Id. at 433 (italics omitted).

Even so, "the Fifth Circuit has made clear that the standard is not whether the plaintiff can successfully state and support a Title VII claim but whether the plaintiff

'reasonably believes the employment practice to be unlawful.'" Id. (italics omitted). "This 'reasonable belief' standard acknowledges that there is 'some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII.'" Id. (quoting E.E.O.C. v. Rite Way Serv., Inc., 819 F. 3d 235, 241 (5th Cir. 2016)). From Fifth Circuit jurisprudence, "two and one-half months is the longest period that can, without more, show causation for retaliation purposes." Id. at 434 (citing Brown v. Wal-Mart Stores E., L.P., 969 F. 3d 571, 578 (5th Cir. 2020) (nothing that the court has held periods of six-and-a-half weeks, two months, and two-and-a-half months to be close enough to show a causal connection)).

The Fifth Circuit has held that "'[i]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.'" Feist v. La., Dept. of Justice, Office of the Atty. Gen., 730 F. 3d 450, 454 (5th Cir. 2013) (quoting LeMaire v. La., 480 F. 3d 388–39 (5th Cir. 2007) (internal citation omitted)). Then, "'the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation'…which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." Id. "[T]o avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." Id. (quoting Long v. Eastfield College, 88 F. 3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted)).

## II. Summary of the Arguments.

It its Motion, NLCL argues White cannot establish a prima facie case of discrimination or retaliation in violation of Title VII or the LEDA. See Record Document 39

10

at 1. Even if she could establish a prima facie case, NLCL claims it had a legitimate, non-discriminatory reason for terminating her. See id. As a precaution, NLCL first analyzes whether White has established a successful hostile work environment claim because of the nature of certain allegations contained in her Complaint. See id. at 11. NLCL asserts that her hostile work environment claim is prescribed, and even if it was timely, the alleged conduct is not sufficiently severe and pervasive to be actionable under Title VII or the LEDA. See id. at 13, 15.

With respect to White's gender-based discrimination claim, NLCL contends that she cannot establish the fourth element, i.e., that others similarly situated were treated more favorably. See id. at 19. Contrary to White's allegation, NLCL advances that King was fired in 2020 and was replaced by two female employees. See id. Moreover, while DeBord was found to have violated lab procedures in the drug chemistry section, he was removed and assigned to toxicology where no violations occurred. See id. at 19–20. DeBord resigned in 2022. See id. at 20. NLCL also submits that White cannot show she was replaced by someone outside her protected class because Sonia Nunnery ("Nunnery"), a female, filled White's position. See id.

Even if the Court assumes that White can establish a prima facie case of discrimination, NLCL argues it has demonstrated a legitimate, non-discriminatory reason for its actions. See id. As set forth in its attached affidavits and supporting documentation, NLCL claims there were numerous concerns related to White's performance, dishonesty, and negative impact she had on employee morale. See id. NLCL asserts that the System Directors, with the concurrence of the Laboratory Director, determined the situation could not be remedied, so termination was the only appropriate course of action. See id.

11

As to White's retaliation claim, NLCL contends she has not alleged that she engaged in a protected activity. See id. at 21. At most, NLCL maintains she claims that on August 18, 2020, she advised the administration "that she believed she was being treated differently because of her gender." See id. NLCL argues this complaint was not in opposition to any alleged unlawful employment practice, nor was it made to the EEOC, or other administrative investigation tasked with investigating allegations of Title VII discrimination. See id. Even if a prima facie case could be established, NLCL advances it had a legitimate, non-discriminatory reason for her termination. See id.

White opposes, asserting that the determination of whether she can present a prima facie case of gender discrimination or retaliation entails the assessment of credibility which is not to be considered in a summary judgment determination. See Record Document 45 at 1. She submits that genuine issues of material fact exist regarding her claims. See id. White argues she has established a prima facie case of gender discrimination and retaliation. See Record Document 45-1 at 7. With respect to her discrimination claim, she contends that NLCL concedes that she is a member of a protected class and suffered an adverse employment action. See id. at 7–8. Thus, she states that the only elements at issue are (1) whether she was replaced by someone outside of her protected class or (2) whether she was treated differently than her similarly situated male comparators. See id. at 8. White claims she was replaced by Stout, a male. See id. Furthermore, she argues that she was treated differently than King and DeBord, her similarly situated male comparators, because even though they were both accused of wrongdoing, neither was investigated, placed on leave, or disciplined. See id. at 9.

As to her retaliation claim, White argues NLCL has conceded that she suffered an adverse employment action. See id. at 10. Thus, she asserts that only two elements are disputed. See id. White contends she engaged in the protected activity of both making a claim of discrimination and opposing the same, the latest of which occurred on August 18, 2020. See id. at 11. She maintains that she can meet the burden of establishing a causal connection by showing knowledge of protected activity, prior work history, and a temporal connection. See id. at 12.

Furthermore, White submits there are genuine issues of material fact regarding NLCL's proffered reasons. See id. at 15. She denies NLCL's alleged acts of poor performance, dishonesty, and negative impact on employee morale. See id. White argues this competing testimony is best left to the determination of a jury. See id. Additionally, she contends adverse action was taken by decision makers shortly after learning of her protected activity, and the proffered reasons were subjective and unworthy of credence. See id. at 16.

NLCL responds, reiterating that White's hostile work environment claim should be dismissed. See Record Document 46 at 1. Moreover, NLCL submits that her self-serving statements are insufficient to defeat summary judgment evidence. See id. NLCL argues White's declaration is a sham because it contains several statements that are contrary to her deposition testimony, and she fails to provide an explanation for the contradictions. See id. at 2. For example, in her declaration, White claims there was a conversation in May or June 2020 where she and others explained "the derogatory comments and inappropriate behavior towards female employees by [] Barnhill." See id. However, she testified that all such derogatory comments occurred prior to the summer or fall of 2017,

and Barnhill's comments ceased after NLCL moved into the new facility. See id. at 2–3. NLCL asserts that her declaration is an effort to tell the story differently to create a genuine issue of material fact, which is improper. See id. at 3.

NLCL reasserts that White cannot survive summary judgment on her claim of gender-based discrimination. See id. NLCL disputes that she was replaced by Stout and that she successfully demonstrated she was treated less favorably than King or DeBord. See id. at 3–4. Even if this Court finds White has satisfied her burden of presenting a prima facie case of gender-based discrimination, NLCL maintains that it has presented a legitimate, non-discriminatory reason for her termination. See id. at 5. NLCL submits that White has offered no evidence of pretext beyond her conclusory, self-serving declaration stating her belief that she was discriminated against. See id. at 6. NLCL contends that this declaration is insufficient to overcome its evidence presented in the form of affidavits by Jones, Wojtkiewicz, and Alanna Brauer ("Brauer"), text messages, attendance records, and corrective action records. See id.

Additionally, NLCL reiterates that White cannot survive summary judgment on her retaliation claim. See id. NLCL argues that her informal complaint about activities that are no longer occurring is nothing more than "abstract grumblings" or vague expressions of discontent, which are not actionable under Title VII. See id. at 9. Furthermore, NLCL advances that a conclusory, informal complaint by White stating that she felt she was being treated less favorable because she was female, without more, is not enough to constitute "opposition to conduct that is unlawful" as required by Title VII. See id. NLCL contends that she has failed to present evidence that establishes a causal connection between her termination and internal complaints. See id. at 9–10.

**III. Analysis.**

The Court does not find that White has asserted a hostile work environment claim under Title VII or the LEDA. Neither her Complaint nor opposition discuss this type of claim. Therefore, the Court will not analyze whether a hostile work environment claim survives summary judgment because such a claim is not before the Court.

(a) Gender-Based Discrimination Claim.

The Court will first analyze whether White's gender-based discrimination claim under Title VII and the LEDA survives summary judgment. There is sufficient evidence demonstrating that the first three elements of the prima facie case have been met. White is a female employee, she was qualified for her positions at NLCL, and her employment was ultimately terminated. While the parties do not dispute the first three elements, the fourth element is disputed.

The fourth element consists of two inquiries, and only one must be satisfied to successfully establish the fourth element. The first inquiry asks whether White was replaced by someone outside her protected group, i.e., a male. During the September 21, 2020 Zoom meeting, White voluntarily stepped down from her interim position as the Firearms Section Supervisor and requested to serve as a Senior Scientist. See Record Document 39-5 at 70–71. After White's termination, Stout, a male, assumed the position of Firearms Section Supervisor, and Nunnery, a female, served as NIBIN coordinator. See Record Document 39-1 at ¶¶ 25, 26; see also Record Document 39-1 at 102. The parties dispute whether White was replaced by Stout or Nunnery. From the Court's review of the summary judgment record, it appears she was replaced by both Stout and Nunnery

because she once served as both the Firearms Section Supervisor and NIBIN Coordinator. However, the adverse employment action does not include her voluntary resignation; it only includes the termination of her employment. At the time of her termination, she was employed as a Senior Scientist and the ATF NIBIN Coordinator. See Record Document 39-5 at 73. Therefore, with respect to her gender discrimination claim, the only replacements the Court is analyzing are for the Senior Scientist position and the ATF NIBIN Coordinator position. The parties only discuss, and the Court is only aware of Nunnery, White's replacement for the ATF NIBIN Coordinator position. Nunnery is a female employee who is not outside of White's protected group.

White still may be able to establish the fourth element of the prima facie case under the second inquiry, which asks whether she was treated less favorably than other similarly situated employees outside her protected group. She points to King and DeBord, two male employees. See Record Document 45-2 at ¶ 7. King worked in the Drug Chemistry Section in the Alexandria, Louisiana Satellite Laboratory. See id. at ¶ 8. His supervisors were Jones, Wojtkiewicz, and Barnhill. See id. In 2020, Michael Stelly ("Stelly"), the Alexandira Satellite Laboratory Director, terminated King due to misconduct, such as missing work, not calling in, and unsatisfactory work. See id. Later on, Barnhill rehired him. See id. DeBord worked in the Drug Chemistry Section in the Shreveport Laboratory. See id. at ¶ 9. His supervisors were Jones, Wojtkiewicz, and Barnhill as well. See id. He violated certain law procedures, and as a result, he was transferred to the Toxicology Department. See id. In 2022, he voluntarily resigned. See id.

White claims that unlike King and DeBord, she was not given the opportunity to be rehired, to transfer, or voluntarily resign; rather, her employment was terminated. See id.

at ¶¶ 8–10. "Courts within the Fifth Circuit define 'similarly situated' narrowly." <u>Scott v. Brandon Co. of Tenn., LLC,</u> No. 23-697, 2025 WL 852504, at *12 (M.D. La. Mar. 18, 2024). When analyzing similarly situated comparators:

> "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job responsibilities, shared the same supervisor [,] or had their employment status determined by the same person[.]" "Employees with different supervisors, who work for different divisions of a company…generally will not be deemed similarly situated." The Fifth Circuit has further explained, that "employees who have different work responsibilities…are not similarly situated."

<u>Id.</u> Additionally, "a proper comparator is one that shares with a plaintiff 'essentially comparable violation histories.'" <u>Id.</u> While White, King, and DeBord shared the same supervisors, they are not similarly situated comparators. The summary judgment record lacks sufficient evidence showing that they shared the same work responsibilities and duties.

White fails to provide any evidentiary support describing King's job duties and responsibilities in the Alexandria Laboratory. <u>See</u> Record Document 39-5 at 77–78. She did not know how long he was employed at the crime lab nor whether he was still employed at the lab. <u>See id.</u> at 78. With respect to DeBord, White testified that she was unsure of the lab procedures that he violated, she never personally observed any of these violations, and she never would have known what his specific lab procedures were. <u>See id.</u> at 78–79. Additionally, she never worked with him directly. <u>See id.</u> at 79. White fails to put on sufficient evidence showing that King and DeBord were her male comparators; the Court is not even aware of their job responsibilities or duties. She has failed to satisfy the fourth element of the prima facie case for gender-based discrimination, and thus, the

burden does not shift onto NLCL to prove it had a legitimate, non-discriminatory reason for terminating her employment. Therefore, with respect to White's gender-based discrimination claim under Title VII and the LEDA, NLCL's Motion is **GRANTED**, and her claim is **DISMISSED WITH PREJUDICE**.[1]

(b) Retaliation Claim.

The Court will now analyze whether White's retaliation claim under both Title VII and the LEDA survives summary judgment. There is no dispute as to the second element of the prima facie case because White was terminated, which is considered an adverse employment action. The parties dispute the first and third elements of the prima facie case.

The first element asks whether White participated in a protected activity. In her declaration, she states:

> During late May of June 2020 (I am unsure of the exact date), a large group of coworkers met at Red River Brewery in Shreveport, Louisiana…There was a conversation amongst all of us where each female present took turns explaining to Mr. Joey Jones the derogatory comments and inappropriate behavior towards female employees by Mr. Jimmy Barnhill. I specifically made by complaints of gender discrimination known in this meeting.

See Record Document 45-2 at ¶ 11. In her deposition, she testified that once she moved into the new crime lab in the summer or fall of 2017, Barnhill stopped making discriminatory statements. See Record Document 39-5 at 42. However, she then testified

---

[1] The Court notes that even if White could successfully establish the prima facie case for gender-based discrimination, her claim would still fail because the summary judgment record supports a finding that NLCL had a legitimate, nondiscriminatory reason for terminating her employment. Additionally, White has failed to allege or sufficiently prove pretext.

that after moving into the new building, she recalled Barnhill and Jones making some discriminatory comments, but she could not remember the exact comments. See id. at 43.

In response to her declaration and deposition testimony, NLCL invokes the sham affidavit doctrine. At the summary judgment stage, "'a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition.'" Rodriguez v. City of Corpus Christi, 129 F. 4th 890, 897 (5th Cir. 2025) (quoting Seigler v. Wal-Mart Stores Tex., L.L.C., 30 F. 4th 472, 477 (5th Cir. 2022) (quoting Kennett-Murray Corp. v. Bone, 622 F. 2d 887, 893 (5th Cir. 1980))). However, "[t]he 'sham affidavit doctrine' is an exception to this rule that allows a district court to disregard 'statements made in an affidavit that are "so markedly inconsistent" with a prior statement as to "constitute an obvious sham."'" Id. (quoting Winzer v. Kaufman Cnty., 916 F. 3d 464, 472 (5th Cir. 2019) (quoting Clark v. Resistoflex Co., 854 F. 2d 762, 766 (5th Cir. 1988))). The Fifth Circuit has held that "'the bar for applying the doctrine is a high one, typically requiring affidavit testimony that is "inherently inconsistent" with prior testimony.'" Id. (quoting Seigler, 30 F. 4th at 477) (quoting Winzer, 916 F. 3d at 472)). It is inappropriate for a court to apply this doctrine "'where an "affidavit supplements, rather than contradicts" an earlier statement.'" Id. (quoting Winzer, 916 F. 3d at 473) (quoting Clark, 854 F. 2d at 766)).

With respect to White's statement in paragraph 11 of her declaration, the Court will not apply the sham affidavit doctrine. While she could not recall Barnhill's exact comments, she testified that he made discriminatory comments after they moved into the new building. Thus, these comments could have been made in May or June of 2020, and

19

her statements are not wholly inconsistent with her deposition testimony. However, White's lack of knowledge and support for these statements are concerning for other reasons. "A self-serving affidavit alone…will not defeat a motion for summary judgment." Spencer v. FEI, Inc., 725 Fed. Appx. 263, 268 (5th Cir. 2018) (citing DIRECTV, Inc. v. Budden, 420 F. 3d 521, 531 n. 49 (5th Cir. 2005)). The Fifth Circuit does not consider "'self-serving allegations [to be] the type of "significant probative evidence" required to defeat summary judgment.'" U.S. v. Dolenz, No. 09-1311, 2011 WL 4351558, at *3 (N.D. Tex. June 16, 2011) (quoting U.S. v. Lawrence, 276 F. 3d 193, 197 (5th Cir. 2001)). White's alleged complaint to Jones made during late May or June 2020 is only supported by her self-serving declaration. There is no other summary judgment evidence providing further proof that this complaint was made, and thus, the Court will not consider White's alleged May or June 2020 complaint as a protected activity.

White also contends that on August 18, 2020, she made a complaint during a meeting with Jones, which qualifies as a protected activity. See Record Document 1 at ¶ 36; see also Record Document 45-2 at ¶ 12. "'An employee's informal complaint to an employer may constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is unlawful and the employee holds a good faith, reasonable belief of the conduct's unlawfulness.'" Ford v. Amethyst Constr., Inc., No. 14-2617, 2016 WL 1312627, at *9 (W.D. La. Apr. 4, 2016). See Williams v. Racetrac Petroleum, Inc., 824 F. Supp. 2d 723, 726 (M.D. La. 2010) (citing Cavazos v. Springer, No. 06-058, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 8, 2008)). In NLCL's attached affidavits submitted by Jones, Brauer, and Wojtkiewicz, they do not remember White ever complaining about gender discrimination prior to her termination. See Record Documents

20

39-1, 39-3, & 39-4. NLCL also attached Jones's personal notes taken during each of his meetings with White. <u>See</u> Record Document 39-2. His notes from August 18, 2020 make no mention of her gender discrimination complaint. <u>See id.</u> at 2–3.

The Fifth Circuit has held that a nonmovant, like White, cannot satisfy her burden and "'defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" <u>Ayorinde</u>, 121 F. 4th 508 (quoting <u>Turner v. Baylor Richardson Med. Ctr.</u>, 476 F. 3d 337, 343 (5th Cir. 2007) (internal quotation marks and citation omitted)). There is nothing in the summary judgment record to support White's contention that she engaged in a protected activity. In her Complaint, deposition testimony, and declaration, she merely states that she complained to Jones during the August 18 meeting about gender discrimination. She provides no further factual details or evidence to support her conclusory and unsubstantiated assertions of gender discrimination. Furthermore, she fails to point to a specific policy or practice of NLCL that violates Title VII or the LEDA. Since White cannot establish the first element of the prima facie case, the Court will end its inquiry on her retaliation claim, and the burden will not shift to NLCL. Therefore, with respect to her retaliation claim under Title VII and the LEDA, NLCL's Motion is **GRANTED**, her claim is **DISMISSED WITH PREJUDICE**.[2]

---

[2] The Court notes that even if White could successfully establish the prima facie case for retaliation, her claim would still fail because the summary judgment record supports a finding that NLCL had a legitimate, nonretaliatory reason for terminating her employment. Additionally, White has failed to allege or sufficiently prove pretext.

**CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that NLCL's Motion for Summary Judgment (Record Document 39) is **GRANTED**. White has failed to establish the prima facie case for both of her claims and has failed to show that there are genuine issues of material fact in dispute. Therefore, her gender-based discrimination claim and retaliation claim under Title VII and the LEDA are both **DISMISSED WITH PREJUDICE**.

A Judgment accompanying this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 16th day of April, 2025.

UNITED STATES DISTRICT COURT JUDGE